UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DATAMATICS GLOBAL
SERVICES, INC.,

        Plaintiff,                Case No. 2:23-cv-12035

v.                                          Honorable Susan K. DeClercq
                                          United States District Judge
JOSEPH RAVI, and STARTEK USA,
INC.,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 13)**

In 2018, Datamatics Global Services hired Joseph Ravi as its AVP of Sales and Business Development. Datamatics and Ravi entered into two employment contracts. The first contract prohibited Ravi from disclosing Datamatics's confidential information, even after the termination of his employment. The second contract prohibited Ravi from soliciting business from Datamatics's customers for two years after the termination of his employment.

In October 2022, Ravi resigned from Datamatics. A few weeks later, he began working for one of Datamatics's competitors, Startek USA. Datamatics alleges that in the months that followed, Ravi used and disclosed Datamatics's confidential information to solicit for Startek the business of one of Datamatics's customers, PSI.

After PSI transferred its business from Datamatics to Startek, Datamatics sued both Ravi and Startek, alleging that Ravi breached his contracts with Datamatics and that Startek tortiously interfered with the contracts. Datamatics also alleges that both Ravi and Startek tortiously interfered with its business relationship with PSI. Ravi and Startek filed a joint motion to dismiss, arguing that Datamatics failed to state a claim. As explained below, Defendants' Motion to Dismiss will be denied.

## I. BACKGROUND

Plaintiff Datamatics Global Services "provides consulting, information technology, data management, and business process management" to clients worldwide. ECF No. 10 at PageID.66; *see also* ECF No. 10-2 at PageID.82.

In January 2018, Datamatics hired Defendant Joseph Ravi as the AVP of Sales and Business Development. ECF No. 10 at PageID.66. At that time, Datamatics and Ravi executed two contracts: (1) an Employment Agreement, *see* ECF No. 10-2; and (2) a "Proprietary Rights and Nondisclosure Terms and Conditions of Employment," *see* ECF No. 10-3.

In addition to providing the terms and scope of Ravi's employment, the Employment Agreement stated that Ravi agreed "not to disclose or use at any time any Confidential information" except as necessary in the performance of his duties on behalf of Datamatics. ECF No. 10-2 at PageID.85. "Confidential Information," under the Employment Agreement's terms, includes:

(1) Information, observations and data concerning the business or affairs of the Company;
(2) Information, observations and data concerning the Company's personnel, products, services, suppliers, and/or materials;
(3) The Company's fees, costs and pricing structures;
(4) Designs, analyses, drawings, photographs and reports;
(5) Computer software, including operating systems, applications and program listings;
(6) Flow charts, manuals and documentation;
(7) Databases;
(8) Accounting and business methods;
(9) Inventions, devices, new developments, methods and processes, whether patentable or unpatentable and whether or not reduced to practice;
(10) Customers and clients and customer or client lists;
(11) Other copyrightable works;
(12) All production methods, processes, technology and trade secrets; and
(13) All similar and related information in whatever form.

*Id.* at PageID.86.

The Nondisclosure Terms and Conditions provided that all "Proprietary Information" was "the exclusive property of the Company," and that Ravi would not "use or disclose any Proprietary Information, directly or indirectly" during his employment nor for three years after the termination of his employment. ECF No. 10-3 at PageID.93. The Nondisclosure Terms and Conditions also stated that Ravi would "not solicit or otherwise encourage . . . any customer of Company to terminate or reduce its business with Company" until two years after the termination of his employment with Plaintiff. *Id.*

As AVP of Sales and Business Development, Ravi was "heavily involved in

handling the offshore contract center services project" for a particular client, PSI. ECF No. 10 at PageID.70. As a result of Ravi's work with PSI, Datamatics alleges that Ravi "had access to and used Datamatics' confidential information regarding PSI." *Id.*

In October 2022, Ravi resigned from his role with Datamatics. *Id.* at PageID.66. One month later, Ravi began working for Defendant Startek, one of Datamatics's direct competitors. *Id.* at PageID.65. Plaintiff alleges that, after starting work for Startek, Ravi began soliciting PSI to reduce and/or terminate its business with Datamatics. *Id.* at PageID.70. To that end, Plaintiff alleges Ravi "used [Datamatics's] confidential and proprietary information" about the services Datamatics provided to PSI to "highlight[] alleged, false and/or distorted quality issues with the offshore contract center services." *Id.*

Datamatics also alleges that Ravi "solicited and encouraged current employees and other customers to leave Datamatics" at an Association of Test Publishers conference on March 15, 2023. *Id.* at PageID.71.

After Datamatics sent a cease-and-desist letter to both Ravi and Startek on June 1, 2023, *see* ECF No. 10 at PageID.72, Datamatics filed this lawsuit against both of them. Datamatics asserts claims for breach of contract against Ravi, tortious interference with contract against Startek, and tortious interference with business relationship against both Ravi and Startek.

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

## III. ANALYSIS

### A. Breach-of-Contract Claim

Count I of the Amended Complaint asserts a breach-of-contract claim against Ravi. ECF No. 10 at PageID.72–74. Ravi asserts this claim should be dismissed for two reasons: (1) because Datamatics has not sufficiently alleged Ravi breached either contract; and (2) because the nonsolicitation restrictive covenant is

unenforceable. ECF No. 13 at PageID.106–109. Datamatics responds that it did plausibly allege breach and that the restrictive covenant is enforceable.

### 1. Allegations of Breach

To state a breach-of-contract claim under Michigan law, a plaintiff must allege (1) the existence of a contract; (2) the other party's breach of that contract; and (3) that the plaintiff suffered injuries as a result of the breach. *See El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)).

Ravi argues that Datamatics has not alleged he breached any agreement because the First Amended Complaint merely alleges that Ravi communicated *false* information to PSI, and false information cannot be proprietary or confidential information. ECF No. 13 at PageID.106. Maybe so. But that is not all Datamatics's Amended Complaint alleges.

Importantly, the Amended Complaint alleges that Ravi communicated three categories of information to PSI *in the process of soliciting* PSI's business: (1) alleged information; (2) false information; "and/or" (3) distorted quality issues. ECF No. 10 at PageID.70. Moreover, Datamatics alleges that Ravi "used [its] confidential and proprietary information" in soliciting PSI's business. *Id.* This is sufficient to state a claim for breach of contract.

Beginning with the first element, the Amended Complaint alleges the

existence of *two* contracts: the Employment Agreement, which prohibits Ravi from disclosing confidential information, *see* ECF No. 10-2 at PageID.85–86, and the Nondisclosure Terms and Conditions, which prohibits Ravi from soliciting any Datamatics customers for two years after his employment with Datamatics ended, ECF No. 10-3 at PageID.93.

Turning to the second element, Datamatics has sufficiently alleged that Ravi breached both contracts. Datamatics alleges Ravi disclosed confidential information to PSI in violation of the Employment Agreement, for the purpose of soliciting PSI's business in violation of the Nondisclosure Terms and Conditions. The allegation that Ravi communicated with PSI about its business with Datamatics is sufficient to allege a breach of the Nondisclosure Terms and Conditions. *See* ECF No. 10-3. Datamatics's factual allegations are also sufficient to allege a breach of the Employment Agreement, which prohibited Ravi from "disclos[ing] or us[ing] at any time any Confidential Information," which, under the Employment Agreement terms, included "customers and clients" and "observations" about "the business or affairs of" Datamatics and its "products, services, suppliers, and/or materials." ECF No. 10-2 at PageID.86. The Amended Complaint alleges Ravi used information about PSI which he gained during his employment with Datamatics and communicated information and observations about Datamatics's internal business operations to PSI. *See* ECF No. 10. Although Ravi argues that false information

cannot be confidential and proprietary information, "distorted quality issues" could be confidential and proprietary information. And, depending on what the allegedly "false information" was, it could also be considered confidential information under the Employment Agreement's terms if it was information based upon Defendant Ravi's "observations" while he worked for Datamatics. *See* ECF No. 10-2 at PageID.8. In sum, at this early stage, Datamatics has adequately alleged Ravi breached both agreements by soliciting PSI's business using confidential and proprietary information.

Finally, Datamatics has satisfied the third element by alleging it lost PSI's business as a result of Ravi's breach. *See* ECF No. 10 at PageID.70 (alleging that Ravi's solicitation of PSI's business caused PSI to request that Datamatics "transfer[]" its "work" to Startek); *id.* at PageID.72 (alleging that Ravi's breach of contract caused the loss of business and profits).

Taken together, the allegations in the Amended Complaint are sufficient to state a breach-of-contract claim against Ravi.

### 2. Enforceability of Nonsolicitation Covenant

Ravi next argues that Datamatics's breach-of-contract claim should be dismissed because the nonsolicitation covenant is unenforceable as unreasonable. ECF No. 13 at PageID.107–09.

True, "noncompetition agreements are . . . only enforceable to the extent they

are reasonable." *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 545 (Mich. Ct. App. 2007) (citing *Stoia v. Miskinis*, 298 N.W. 469, 474 (Mich. 1941)). To be reasonable, such covenants must "protect an employer's reasonable competitive business interests," and be reasonably tailored to do so "in terms of duration, geographic scope, and the type of employment or line of business." *Id.* (quoting *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 919 (Mich. Ct. App. 2006). Importantly, "[t]o be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee[] gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Id.*

Michigan courts have determined that two-year nonsolicitation covenants are reasonable because "employers have legitimate business interests in restricting former employees from soliciting their customers." *Total Quality, Inc. v. Fewless*, 958 N.W.2d 294, 306 (Mich. Ct. App. 2020). Ravi makes much of the fact that the nonsolicitation clause at issue here is not geographically limited. *See* ECF Nos. 13 at PageID.108; 15 at PageID.176. But notably, the nonsolicitation clause contemplated in *Total Quality* was not geographically limited either. *See* 958 N.W.2d at 300, 302. The *Total Quality* panel determined that such clauses are reasonable, even absent geographic limitations, because they are time-limited and do not prohibit general competition with the former employer, but rather *solicitation*

- 9 -

of the former employer's business for a short period of time. *Id.* at 306.

In sum, it appears that the nonsolicitation clause is reasonable and enforceable. Accordingly, Datamatics's breach-of-contract claim against Ravi survives.

### B. Tortious Interference with a Contract

Count II of the Amended Complaint lodges a claim of tortious interference with a contract against Startek. *See* ECF No. 10 at PageID.74–75.

Under Michigan law, tortious interference with a contract requires (1) the existence of a contract; (2) a breach of the contract; and (3) an unjustified instigation of the breach by the defendant which (4) causes injury to plaintiff. *Relative Time Films, LLC v. Covenant House Mich.*, 999 N.W.2d 64, 68 (2022) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005)). To satisfy the third element, a plaintiff "must allege the intentional doing of a per se wrongful act *or* the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights" of another. *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 157 (Mich. Ct. App. 2004) (emphasis added) (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (2002)).

Startek challenges the second and third elements. *See* ECF No. 13 at PageID.109–11. As discussed above, Datamatics has sufficiently alleged the breach

of a contract, so the second element is satisfied. *See* Part A, *supra*. As to the third element, Startek argues this element is not satisfied because Datamatics does not allege that Startek *knew of* either contract before Ravi breached them, so Startek could not have acted with malice. ECF No. 13 at PageID.110.

But the Amended Complaint does allege that Startek was aware of at least one of the contracts. *See* ECF No. 10 at PageID.74 ("Startek is and has been aware of Defendant Ravi's post-employment restrictive covenant obligations to Plaintiff."). The Amended Complaint further alleges that Startek "knowingly and intentionally interfered" with Datamatics's contractual rights with Ravi "by aiding and inducing" Ravi's breach of the "post-employment restrictive covenant obligations." *Id.* At this pleading stage,[1] that is enough to allege tortious interference with a contract. *See Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (noting that "an essential element of a claim of tortious interference with a contract" is whether the defendant unjustifiably instigated or induced" the party to breach contractual obligations).

In sum, Datamatics has sufficiently alleged that Startek tortiously interfered with the contracts between Datamatics and Ravi, so Count II will proceed.

### C. Tortious Interference with Business Relations

---

[1] Although the Parties dispute exactly when Defendant Startek became aware of the contractual obligations between Datamatics and Ravi, that is a dispute best resolved through discovery.

Count III of the Amended Complaint alleges tortious interference with business relations against both Ravi and Startek. ECF No. 10 at PageID.75–76. Specifically, Datamatics alleges that both "solicited Plaintiff's clients," including PSI, and that Ravi continues to "us[e] [Plaintiff's] confidential information" and make "disparaging remarks regarding Plaintiff." *Id.* at PageID.76.

"The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff." *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.*, 821 N.W.2d 1, 3 (Mich. 2012) (internal quotations omitted) (quoting *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 696 (Mich. 2010).

Defendants argue Count III should be dismissed against both Ravi and Startek, but for different reasons.

### 1. Claim Against Ravi

Ravi argues Count III must be dismissed against him under *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956); *see also* ECF No. 13 at PageID.112. But *Hart* is not applicable here.

In *Hart v. Ludwig*, the Michigan Supreme Court "noted the distinction

between the legal duty which arises by operation of a contract and the fundamental concept of a legal duty to avoid conduct which creates liability in tort." *Brock v. Consol. Biomed. Lab'ys*, 817 F.2d 24, 25 (6th Cir. 1987). "[T]he *Hart* rule directs that 'if the alleged tort claim would not exist absent the contract, and the harm claimed does not extend beyond the realm of the contract, no action in tort will lie.'" *Chemico Sys., Inc. v. Spencer*, No. 22-11027, 2023 WL 1993783, at *6 (E.D. Mich. Feb. 14, 2023) (quoting *Marco Int'l, LLC v. Como-Coffee, LLC*, No. 17-CV-10502, 2018 WL 1790171, at *4 (E.D. Mich. Apr. 16, 2018)). "In other words, the threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Citizens Ins. Co. of Am. v. Pro. Temperature Heating & Air Conditioning, Inc.*, No. 300524, 2012 WL 5290289, at *5 (Mich. Ct. App. Oct. 25, 2012) (quoting *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997)).

Here, Datamatics alleges not only that Ravi violated his contractual obligations by using and disclosing confidential information to solicit Datamatics customers, *see* ECF No. 10 at PageID.72–74, but also that Ravi violated the common-law duty not to tortiously interfere in Datamatics's business relations by intentionally providing false information and disparaging remarks about Datamatics to its customers, *see id.* at PageID.75–76. It may be true that the same or overlapping conduct by Ravi breached both duties. But that does not necessarily mean that the

*Hart* rule is applicable. Indeed, it appears the harm Datamatics complains of—Ravi's intentional interference in Plaintiff's business relationship with PSI by soliciting PSI's business using false information and disparaging remarks about Plaintiff—would exist even "in the absence of [the] contract[s]." *Marco Int'l*, 2018 WL 1790171, at *4. Accordingly, the *Hart* Rule does not bar Count III as to Ravi at this juncture.

### 2. Claim Against Startek

Startek also argues Count III should be dismissed because Datamatics has not alleged Startek intentionally "engaged in tortious conduct" by soliciting business from PSI or Plaintiff's other clients. ECF No. 13 at PageID.114. But the Amended Complaint, construed in Datamatics's favor, includes enough facts to state a claim for tortious interference with a business relationship.

Importantly, "interference alone will not support a claim" of intentional interference with a business relationship. *Hope Network Rehab. Servs. v. Mich. Catastrophic Claims Ass'n*, 994 N.W.2d 873, 879 (Mich. Ct. App. 2022). "[T]o satisfy the third element, the plaintiff must establish that the defendant 'acted both intentionally and either improperly or without justification.'" *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 453 (2018) (quoting *Dalley*, 788 N.W.2d at 696). Indeed, "[a] tortious-interference-with-a-business-relationship claim requires an allegation 'of a per se wrongful act or the doing of a lawful act with malice and

- 14 -

unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *Hope Network*, 994 N.W.2d at 879 (quoting *CMI Int'l*, 649 N.W.2d at 812). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Badiee v. Brighton Area Schs.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005) (quoting *CMI Int'l*, 649 N.W.2d at 812).

Construed in Datamatics's favor, the Amended Complaint alleges that Startek induced Ravi to breach his contractual obligations with Datamatics, ECF No. 10 at PageID.74, and then solicited some of Plaintiff's clients, including PSI, through Ravi's breach of contract, resulting in the loss of PSI's business, *id.* at PageID.71, 76. At this point, Plaintiff's allegation that Startek intentionally induced Ravi's breach of the contract for the purpose of obtaining Plaintiff's clients is enough to satisfy the requisite improper intent.

Indeed, the Michigan Court of Appeals considered similar allegations in *Virchow Krause & Co. v. Schmidt* and found such allegations sufficient to state a claim for tortious interference with a business relationship. No. 266271, 2006 WL 1751835, at *5 (Mich. Ct. App. June 27, 2006). The plaintiff in *Virchow* alleged that its former employee breached a nonsolicitation agreement when she began working for a competitor and soliciting plaintiff's clients. *Id.* at *4–5. Importantly, the plaintiff in *Virchow* alleged that its competitor "induced" and "facilitate[d]"

plaintiff's former employee's ongoing breach of the nonsolicitation agreement. *Id.* at *5. The trial court dismissed the plaintiff's claims before the close of discovery, but the Michigan Court of Appeals reversed, finding that the plaintiff's allegations were sufficient to allege the competitor acted intentionally and with improper motive such that the case should proceed to discovery. *Id.* The same result is appropriate here. On this claim, Datamatics has alleged adequate facts to proceed to discovery. *See id.*

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 13, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 8/29/2024